IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Criminal No. 4:17cr125 |
| | ) | |
| VISHAL JYOTINDRA PATEL, | ) | |
| | ) | |
| Defendant. | ) | |

### POSITION OF UNITED STATES
### WITH RESPECT TO SENTENCING FACTORS

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Brian J. Samuels, Assistant United States Attorney, hereby represents that it has reviewed the Probation Office's pre-sentence report (PSR) and that it does not dispute any of the factors or facts set out therein. For the reasons set forth herein, as well as those to be articulated at the sentencing on March 13, 2019, the United States respectfully requests a sentence within the advisory guideline range on Count Three and a consecutive twenty-four (24) months on Count Five.

#### BACKGROUND

On December 12, 2017, the defendant, VISHAL JYOTINDRA PATEL, was charged, via a five-count Criminal Indictment, with two counts of Wire Fraud, in violation of 18 U.S.C. §1343 (Counts One and Two); one count of Furnishing False Information in a DEA Record, in violation of 21 U.S.C. § 843(a)(4)(A) (Count Three); one count of Mail Fraud, in violation of 18 U.S.C. § 1341 (Mail Fraud) (Count Four); and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Count Five).

1

Following the return of the indictment, the defendant's initial court-appointed counsel withdrew due to a conflict of interest. ECF No. 14. The defendant's current counsel then moved for a competency evaluation of the defendant on or about April 2, 2018, which the Court granted. ECF Nos. 15, 16. A competency hearing was held before the Court on November 26, 2018, and the defendant was determined to be competent at the time of the offenses and to stand trial. ECF No. 18. Thereafter, on December 3, 2018, the defendant pled guilty to Counts Three and Five and the matter was continued for sentencing.

As the Statement of Facts and the information in the PSR reveal, the defendant's convictions stem from his fraudulent efforts to obtain a DEA Registration Number by stealing another's identity and using that DEA Registration Number and other fraudulent documentation to unlawfully practice medicine. *See generally*, PSR at ¶¶ 7.1 – 7.25, 8 – 13. The defendant performed physical examinations on patients and prescribed medicine and other courses of treatment. Fortunately, no patients were harmed. But the risk was significant.

At the time of the events at issue, the defendant, although having attended medical school for some time, had never been licensed by the Virginia Board of Medicine or the Virginia Department of Health Professions to practice medicine in the Commonwealth of Virginia. Nor had PATEL ever been issued a National Provider Identifier (NPI) or a DEA Registration Number. V.D.P., however, was a real person licensed to practice medicine in the Commonwealth of Virginia who maintained a medical practice in Roanoke, Virginia. As required by the Controlled Substances Act, V.D.P. was registered with the DEA and had a unique DEA registration number (last four digits 6476). This number was a means of identifying V.D.P., as defined by Title 18, United States Code, Section 1028(d)(7).

Beginning in or about at least August 2017, and continuing to in or about December 2017, in the Eastern District of Virginia and elsewhere, the defendant herein, devised a scheme and artifice to fraudulently obtain employment as a Doctor of Medicine and Surgery. An investigation conducted by law enforcement determined that the purpose of the scheme and artifice was for PATEL to defraud healthcare staffing companies, facilities, and employers operating in the Eastern District of Virginia and elsewhere and to obtain money and property from such companies, facilities, and employers through false and fraudulent pretenses, representations, and promises, including, among other things, false statements concerning PATEL's qualifications and licenses to practice medicine.

PATEL submitted applications to medical staffing companies, including AMN Healthcare and Staff Care, through which PATEL sought engagement as an independently contracted Doctor of Medicine and Surgery. In such applications, PATEL falsely and fraudulently represented himself to be an individual licensed by the Virginia Board of Medicine to practice medicine in the Commonwealth of Virginia. PATEL so represented himself by, among other things, including false and fraudulent information concerning his education, employment history, medical licenses, and registrations, including but not limited to false NPIs, Virginia Board of Medicine license numbers, and DEA Registration Numbers. PATEL created and submitted falsified and forged documents, which documents falsely represented that PATEL possessed the education, training, certifications, licenses, and registrations required to practice medicine in the Commonwealth of Virginia. These included, but were not limited to, false diplomas, examination certificates, Virginia Board of Medicine licensing certificates, board certifications, and DEA registration certificates.

PATEL included in such falsified and forged documents the personal identifying information of other doctors who were then duly licensed to practice medicine in the Commonwealth of Virginia, including but not limited to V.D.P. Among such information was the DEA registration number then assigned to V.D.P. (last four digits 6476).

Through various means, PATEL obtained and attempted to obtain documents and records of other doctors, including V.D.P., to verify PATEL's false claims regarding his licensing and registrations. Among other documents and records, PATEL obtained and attempted to obtain DEA registration certificates bearing V.D.P.'s name and DEA registration number (last four digits 6476). To obtain such DEA registration certificates, PATEL submitted materially false and forged documents to DEA registration technicians, including but not limited a W-9 Form bearing PATEL's name, Glen Allen address, and social security number (last four digits 3621) and V.D.P.'s DEA registration number (last four digits 6476).

PATEL falsely and fraudulently directed a DEA registration technician to alter the official DEA registration record of V.D.P. to change the social security number assigned to V.D.P.'s DEA registration record from V.D.P.'s true social security number (last four digits 0655) to PATEL's social security number (last four digits 3621). PATEL then used V.D.P.'s DEA registration number (last four digits 6476) in conjunction with his own social security number (last four digits 3621) to request a duplicate DEA registration certificate bearing V.D.P.'s name and DEA registration number.

PATEL fraudulently induced medical staffing companies to enter agreements, including Provider Service Agreements, through which such companies agreed to employ PATEL as an independent contractor and to assign him positions with client healthcare facilities. PATEL obtained and attempted to obtain employment and placement as a Doctor of Medicine and Surgery

at healthcare facilities and employers located in the Eastern District of Virginia and elsewhere, including but not limited to Stoneybrook Physicians.

While falsely and fraudulently posing as a duly licensed Doctor of Medicine and Surgery, PATEL practiced medicine at such facilities by, among other things, seeing patients, conducting and ordering tests and examinations, and prescribing and/or altering patient medications, including some controlled . PATEL received and attempted to receive things of value in exchange for these false and fraudulent medical services, including but not limited to hourly and salary wage payments.

The defendant submitted fraudulent applications to at least four potential employers. These applications used stolen provider information of at least four other individuals and included forged documents from the University of Chicago, false board certification and a forged social security number. When one potential employer inquired about the defendant's board certification and learned that the defendant was not certified, the defendant crafted another scheme to conceal his fraud by claiming that a prior classmate stole his identity and sending a purported email from such classmate and potential employers. (PSR at ¶ 10).

During his placement at Stoneybrook Physicians from October 4, 2017 to Octover 20, 2017, the defendant met with at least twenty-three (23) patients. (PSR at ¶ 12). The defendant created orders for and to discontinue certain medications for at least sixteen patients. *Id.* The defendant was ultimately arrested in Kansas, where he had sought other employment as a medical provider. The defendant denied treating patients as a doctor and informed the arresting agents that he was in school. (PSR at ¶ 13).

In addition to the individuals whose identities the defendant stole, he also victimized the twenty-three patients and obtained unwarranted compensation from his then employer. Starting

at a base offense level six, the defendant received enhancements for abuse of a position of trust / use of a special skill and the commission of the offenses involving vulnerable victims. The defendant is a Criminal History Category III and currently faces an advisory guideline range of 6-12 months on Count Three and a consecutive, mandatory twenty-four (24) months of incarceration on Count Five.

## DISCUSSION

### I. SENTENCING GUIDELINES

As noted in the addendum to the PSR, there are two unresolved objection to the calculation of the defendant's advisory guideline range. The defendant objects to the defendant's criminal history category, arguing that it is overstated. The defendant also objects to the two-level enhancement for vulnerable victims pursuant to U.S.S.G. § 3A1.1(b)(1). The United States submits that both objections are without merit.

To the extent the defendant, in raising these objections, disputes facts set forth in the PSR, "[t]he defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and [to] articulate the reasons why the facts contained therein are untrue or inaccurate." *See United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990) (citing *United States v. Mueller*, 902 F.2d 336, 346 (5th Cir. 1990) (finding that the defendant presented no evidence in rebuttal to the PSR)); *see also United States v. Randall*, 171 F.3d 195, 211 (4th Cir. 1990). Without an affirmative showing that the PSR is inaccurate, the Court is "free to adopt the findings of the [presentence report] without more specific inquiry or explanation." *Terry*, 916 F.2d at 162 (quoting *Mueller*, 902 F.2d at 346). The burden is on the defendant to establish inaccuracy or unreliability. The government bears the burden of showing that a sentencing enhancement applies to undisputed facts by a preponderance of the evidence. *United States v. Steffen*, 741 F.3d 411,

414 (4th Cir. 2013).

## A. CRIMINAL HISTORY

The defendant contends that his criminal history of Category III is overstated. The defendant has a total of four criminal history points, as outlined in paragraphs 44 – 49 of the PSR. These points stem from two 2016 misdemeanor convictions for: (1) Assault and Battery - Family Member; (2) Driving under the Influence of Drugs. (PSR at ¶¶ 44, 45). The defendant then received two points for committing the instant offense while under a criminal justice sentence. (PSR at ¶¶ 49). The defendant also has two reckless driving convictions for which he received no criminal history points in 2016.

In pertinent part, Section 4A1.3(b)(1), states:

> If reliable information indicates that the defendant's criminal history category *substantially* over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1). The Commentary to Section 4A1.3 suggests that "[a] downward departure from the defendant's criminal history may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." *Id.* at cmmt., n.3. A defendant seeking a downward departure bears the burden of establishing a mitigating factor by a preponderance of the evidence. *United States v. Sheffer*, 896 F.2d 842, 848 (4th Cir. 1990), *citing United States v. Urreqo-Linares*, 879 F.2d 1234, 1239 (4th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Furthermore, departures are reserved for the exception that takes the case out of the "heartland" of cases for which defendants receive similar sentences. *United States v. Koon*, 518 U.S. 81, 98 (1996).

7

The United States disagrees that a departure is warranted in this case. The United States has reviewed the PSR and the calculation of the defendant's criminal history is correct.[1] Though it is within the Court's discretion to grant a downward departure for an overstated criminal history, the United States contends that Category III is a proper reflection of the defendant's criminal background and his propensity to engage in additional criminal conduct.

The defendant's criminal history is recent and occurred not ten years ago, but in the year prior to his conduct in the instant case. Although the two convictions for which he received criminal history points involved misdemeanors, both were dangerous in nature and occurred when the defendant was a grown man at age 29. In the assault conviction, the defendant threw a soda can at the victim (his 70 year old mother who has had various health issues), hitting and bruising her, and then denied the conduct to officers. In the DUI conviction, the defendant was driving at 90 mph in a 45 mph zone under the influence of Xanax. The defendant was sentenced for this crime during the pendency of the instant offenses.

Following these two misdemeanor offenses, the defendant engaged in two other driving offenses and then committed the instant offenses, which involved sophisticated conduct. Clearly, the defendant was undeterred by his two prior convictions. Given this history and the recency of the current criminal conduct to his prior convictions, the United States respectfully submits that a Criminal History Category of III does not overstate the defendant's criminal history.

B. **VULNERABLE VICTIMS**

The defendant next contends that the patients he saw under the guide of impersonating a licensed doctor with a valid DEA Registration Number were not vulnerable victims. Section

---

[1] The defendant does not argue that the points have been miscalculated by the Probation Officer.

3A1.1(b) provides a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b). The United States agrees that this enhancement is appropriate.

A "vulnerable victim" is a person "(A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible the criminal conduct." U.S.S.G. § 3A1.1, app. n. 2.

At the time of this conduct, the patients that submitted themselves to the defendant's care were victims in the truest sense of the word. It is difficult to imagine circumstances in which individuals could be more vulnerable than submitting themselves to the care of a man holding himself out as a properly licensed physician. The defendant prescribed some medications and ordered the discontinuation of others.

As is clear from the representative victim impact statement of T.J., the defendant's conduct resulted in unease toward the medical system due to the lack of trust. Such conduct goes beyond the abuse of position of trust enhancement because of the natural vulnerability that occurs between physician and patient. Such individuals were certainly vulnerable, that is, "particularly susceptible to the criminal conduct" in which the defendant engaged by representing himself as a physician. U.S.S.G. § 3A1.1, app. n. 2. For such reasons, the United States believes that a vulnerable victim enhancement is appropriate in this case.

## II.     18 U.S.C. § 3553(a) FACTORS

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's

majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)).

The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B); *Biheiri*, 356 F.Supp.2d at 594. The United States submits that a review of the Section 3553(a) factors supports a sentence within the advisory guideline range for Count Three and a consecutive 24 months on Count Five.

In the government's view, the nature and circumstances of the offenses are quite serious and weigh heavily against the defendant. Rather than legitimately complete his medical training and certifications, the defendant took fraudulent shortcuts at the expense of other providers and patient-victims. The defendant's use of the identification information of others results in a mandatory two-year sentence. But his victimization of the twenty-three patients and his employer is not so captured in this sentence. Such conduct certainly merits a sentence of incarceration in its

own right.

The defendant clearly has a supportive family and good upbringing. He is well educated and used his education in committing these offenses. Although the defendant has had various mental health and substance abuse issues (which appear related), he engaged in a complex offense, involving the theft of identities, forging of documents and impersonating of a licensed medical professional. The evaluations conducted during the competency evaluations resulted in the determination that the defendant was not suffering from a mental illness at the time of the offense. In fact, the evaluation revealed that the defendant was exaggerating the severity of his mental problems and malingering and that his report of symptoms was incompatible with his conduct during the offenses.

Section 3553(a) directs this Court to craft a sentence that reflects the seriousness of the offense and the need to promote respect for the law. 18 U.S.C. § 3553(a). Given the strict requirements for those permitted to practice medicine (as evidenced in part by the lengths the defendant went to falsely portray his compliance with such requirements after reportedly failing to obtain his medical license on two occassions) and the dangers presented to patients at the hand of the defendant, the government submits that a sentence of incarceration for Count Three is necessary to reflect the severity of the defendant's conduct.

A within-Guidelines sentence reflects the gravity of the defendant's crimes, and also recognizes his acceptance of responsibility for his conduct. Such a sentence is justified to deter and punish the defendant for his criminal conduct and also to deter others from engaging in such forms of fraud. However, it is no greater than necessary or plainly unjust, as it falls within the range established by the Guidelines. Although advisory, the Guidelines range remains the "starting point and the initial benchmark" for determining the appropriate sentence. *Gall v. United States*,

552 U.S. 38, 128 S.Ct. 586, 596-97 (2007) (*citing Rita,* 551 U.S. 338 (2007)). This is done "[a]s a matter of administration and to secure nationwide consistency," *id*., because the Commission's recommended sentencing range for particular conduct "will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 564 (2007).

## CONCLUSION

Accordingly, for these reasons and others to be offered at the sentencing hearing on March 13, 2019, the United States respectfully submits that a sentence within the advisory range for Count Three and a consecutive 24 month sentence on Count Five would accomplish the aims of Section 3553(a).

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: _____/s/_____
Brian J. Samuels
Assistant United States Attorney
Virginia Bar Number: 65898
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: 757/591-4000
Fax: 757/591-0866
Email: Brian.Samuels@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was filed electronically using the CM/ECF system, on this 6th day of March, 2019, which will result in notification to:

Fernando S. Groene, Esq.
364 McLaws Circle
Suite 1A
Williamsburg, Virginia 23185
(757) 603-6173

And I hereby certify that I have served the document by electronic mail to the following non-filing user:

Shannon Gerard
U.S. Probation Officer
600 Granby Street
Norfolk, Virginia 23510

/s/
Brian J. Samuels
Assistant United States Attorney
Virginia Bar Number: 65898
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: 757/591-4000
Fax: 757/591-0866
Email: Brian.Samuels@usdoj.gov